750 P.2d 1361

The POINTE RESORTS, INC., an Arizona corporation; and Gosnell Development Corporation, an Arizona corporation, Plaintiffs/Appellees,

v.

Donna CULBERTSON, in her official capacity as Clerk of the City of Phoenix; Alex Cordova, in his official capacity as Deputy Clerk of the City of Phoenix; and The City of Phoenix, a body politic, Defendants,

and

Ruth Hamilton; Charles M. Monroe; and Dora Quesada, Defendants/Cross–Claimants/Appellants.

No. CV–86–0470–AP.

Supreme Court of Arizona.

Dec. 15, 1987.

As Modified on Motion for Clarification Feb. 25, 1988.

Gammage & Burnham by Richard K. Mahrle, Karen L. Schroeder, Grady Gammage, Jr., Phoenix, for plaintiffs/appellees.

Cox and Cox by Z. Simpson Cox, William R. Hobson, Robert E. Yen, Phoenix, for defendants/cross-claimants/appellants Hamilton, Monroe and Quesada.

Roderick G. McDougall, Phoenix City Atty., Larry F. Felix, Asst. Phoenix City Atty., Phoenix, for City of Phoenix.

GORDON, Chief Justice.

On March 26, 1986, the Phoenix City Council adopted Ordinance No. S 16367, authorizing the city manager or his designee "to enter into an agreement and execute necessary documents to effect a trade of 29 acres of City-owned land located at the southeast edge of South Mountain Park ... for 34 acres of land owned by Gosnell Development Corporation [GDC] which adjoin South Mountain Park...." The ordinance required GDC to donate the 29 acres back to the City of Phoenix. The City then would execute a 35–year lease granting to GDC the right to use the land as a public golf course. The ordinance was to become effective thirty days after its passage pursuant to Phoenix City Charter ch. IV, § 14; ch. XVI, § 3(A).

Also on March 26, 1986, appellants Ruth Hamilton, Charles M. Monroe, and Dora Quesada applied for and obtained a petition to refer Ordinance No. S 16367 to a city-wide vote. The Phoenix City Clerk's office informed appellants that they had thirty days from March 26 during which to file the required signatures. If the City Clerk found that the signatures filed within that initial thirty-day period were insufficient, then appellants had an additional ten days after the City Clerk had filed a Certificate of Insufficiency during which to file supplemental signatures. This additional filing period is authorized by Phoenix City Code § 12–116, which provides in relevant part:

(A) If the Clerk's certificate shows the petition to be insufficient:

(1) He shall at once notify in writing one or more of the persons designated on the petition as filing the same.

(2) *Within ten days after the filing of the certificate of insufficiency additional signatures properly verified may be filed,* but no further supplementation thereafter shall be permitted.

(Emphasis added.)

On April 24, 1986, appellants filed a petition containing 13,565 signatures with the City Clerk's office. On May 22, 1986, the City Clerk issued a Certificate of Insufficiency informing appellants "that the number of signatures affixed to referendum petition R–1–86 which have been determined to be valid are insufficient in number to equal ten per centum of the total number of votes cast at the last preceding general City election at which a mayor was elected." Appellants then filed additional signatures with the City Clerk's office on June 2, 1986.[1] On June 9, 1986, the City Clerk issued a Certificate of Sufficiency indicating that appellants' petition as supplemented contained sufficient valid signatures to require the City Council to submit Ordinance No. S 16367 to a city-wide vote.

Appellees GDC and The Pointe Resorts, Inc. filed suit in Maricopa County Superior Court challenging the authority of the City of Phoenix to enact an ordinance granting petitioners an additional ten-day filing period. The trial judge ruled that the City of Phoenix did not have the authority to pass § 12–116 and that § 12–116 conflicted with the Phoenix City Charter, provisions of Title 19 of the Arizona Revised Statutes that were incorporated by the Charter, and the Arizona Constitution. Accordingly, the trial court enjoined appellants "from considering as part of the count of verified signatures for the referendum petition any signatures gathered from and after April 25, 1986."

On appeal, we must address the following issue:

Does Phoenix City Code § 12–116, by allowing a ten-day supplementation of referendum petitions, violate:

1. Arizona Constitution article IV, part 1,

2. A.R.S. § 19–142, or

3. Phoenix City Charter chapter XVI?

We have jurisdiction pursuant to A.R.S. § 19–122(C) (Supp.1986).

Arizona Constitution article 4, part 1, section 1(8) provides in relevant part:

**[Local, city, town or county matters]** The powers of the Initiative and the Referendum are hereby further reserved to the qualified electors of every incorporated city, town, and county as to all local, city, town, or county matters on which such incorporated cities, towns, and counties are or shall be empowered by general laws to legislate. *Such incorporated cities, towns, and counties may prescribe the manner of exercising said powers within the restrictions of general laws.*

(Emphasis added.)

General laws governing the initiative and referendum process in cities, towns, and counties are codified at Arizona Revised Statutes title 19, chapter 1, article 4. A.R.S. § 19–141(A) provides in relevant part:

In cities and towns which do not provide by ordinance or charter for the manner of exercising the initiative and referendum powers reserved by the constitution to the people thereof, the provisions of this chapter shall apply to the legislation of such municipalities....

A.R.S. § 19–142(A) provides in relevant part:

The whole number of votes cast at the city or town election at which a mayor or councilmen were chosen last preceding the filing of a referendum petition

---

1. The ten-day supplemental filing period ended on June 1, 1986. Because June 1 fell on a Sunday, however, appellants were permitted to file their additional signatures on Monday, June 2. *See* Phoenix City Code § 1–2 ("Computation

of time—The time within which an act is to be done shall be computed by excluding the first and including the last day; and if the last day be Sunday or a legal holiday, that shall be excluded.")

against an ordinance, franchise or resolution, shall be the basis on which the number of electors of the city or town required to file a referendum petition shall be computed. *The petition shall be filed with the city or town clerk within thirty days after passage of the ordinance, resolution or franchise.*

(Emphasis added.)

Taken together, A.R.S. §§ 19–141(A) and –142(A) provide a thirty-day period following passage of an ordinance during which to file referendum petitions. This period, however, only applies in cities and towns that do not provide by charter or valid ordinance for a different filing period. Because the Phoenix City Council has enacted an ordinance altering the time period, we must only determine whether the ordinance is valid.

To evaluate the validity of an ordinance, we look first to the Phoenix City Charter. Phoenix has expressly incorporated into its charter the above-quoted provisions of Arizona Constitution article 4, part 1, section 1(8), and A.R.S. §§ 19–141(A) and –142(A). *See* Phoenix City Charter ch. XVI, § 2. Additionally, Phoenix City Charter chapter XVI, § 3 provides:

In addition to the provisions of Section 2 hereof, the following provisions are adopted:

A. No ordinance passed by the council shall go into effect *before thirty days from the time of its final passage. . . . If during the said thirty days,* a petition by qualified electors of the city, equal in number to ten per centum of the total number of votes cast at the last preceding general city election at which a mayor was elected protesting the passage of such ordinance, or any item, section, or part thereof, is presented to the council, such ordinance or item, section, or part thereof protested, shall be suspended from going into operation. . . .

B. The city council, by the affirmative vote of two-thirds of its members, may adopt ordinances implementing and clarifying the manner of exercising the referendum *not in conflict with this chapter, the Arizona Constitution, and the laws of Arizona.*

(Emphasis added.)

Phoenix City Charter chapter XVI, section 3(B) thus permits the Phoenix City Council to adopt ordinances affecting the referendum process, such as § 12–116, only if such ordinances do not conflict with the Arizona Constitution, general state laws, or Phoenix City Charter chapter XVI.

Although the constitutional provisions and general state laws dealing with the referendum process do not conflict with § 12–116, we find that Phoenix City Charter ch. XVI, § 3(A), directly conflicts with the ten-day supplemental filing period. Section 3(A) unambiguously provides that petition signatures must be filed within thirty days after the City Council passes the disputed ordinance. Section 3(B) does not provide for an additional filing period. We interpret "thirty days" to mean thirty days and not thirty days plus ten additional days. *Cf.* Phoenix City Charter ch. XV ("The Initiative"), § 3(D) ("Any initiative petition certified insufficient for lack of the number of signatures required by the constitution *may be amended once by filing a supplementary petition within ten days of the filing of the certificate of insufficiency.*") (emphasis added).

Although we believe § 12–116 was well-intentioned, a conflict between Phoenix City Charter ch. XVI, § 3(A) and Phoenix City Code § 12–116 clearly exists. Phoenix City Charter ch. XVI, § 3(B) expressly prohibits the Phoenix City Council from passing an ordinance that conflicts with provisions of Phoenix City Charter ch. XVI. Because a conflict exists, we hold that Phoenix City Code § 12–116 violates Phoenix City Charter ch. XVI. Thus, the Phoenix City Council acted outside its authority when it enacted § 12–116. *See, e.g., City of Scottsdale v. Superior Court,* 103 Ariz. 204, 439 P.2d 290 (1968) (city councils have only those powers that are granted in their city charters). Therefore, the supplemental ten-day filing period is part of an invalid ordinance, and signatures filed during the supplemental period cannot be considered

timely filed. Only those signatures filed prior to April 25, 1986, were timely filed.

Affirmed.

FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.

Note: Justice MOELLER did not participate in the determination of this matter.